Head, Sp. J.,
delivered the opinion of the court:
This is a suit brought by W. TI. Carsey and wife for the purpose of recovering damages for breach of warranty in a deed from Mrs. E. S. Galeote, the mother of Mrs. Carsey. The deed was executed December, 1879. Mrs. E. S. Cal-cóte died January 14, 1881, and this suit was commenced April-, 1887. 'What may be termed the original bill in this case was filed by John L. Calcóte and wife, as ad-ministratrix of Mrs. E. S. Calcóte, against her heirs for the purpose of selling the real estate for the payment of debts, the personalty being insufficient, and for partition. It was taken for confessed as to all the defendants, but subsequently the answer of G. W. Elkin,'as guardian, and the answer of the minors was filed. Some time thereafter an amended bill was filed by the counsel for Mrs. E. O. Cal-cóte, the administratrix, but which it seems was filed without her knowledge, and was repudiated by her as soon as she knew of its existence, and, as no proceedings were ever taken under it, it need not be further considered. The original bill seems to have been permitted to rest for several years without any definite action having been taken under it. Nearly two years after this bill had been filed, Lee 0. and O. D. Elkin, by guardian and next friend, filed their bill against W. H. Carsey and others, claiming, as the heirs of Mrs. E. S. Calcóte, an undivided one-third interest in the tract- of land in controversy in this cause. This branch of the case was prosecuted to the supreme court, and, in 1887, a decree rendered, establishing their right to the one-third interest claimed by them. Elkins v. Carsey (Tenn.), 3 S. W. Rep., 828 [SeeS. C., ante, p. 292]. In April, 1887, W. II. Carsey and wife filed their original *321 bill against E. O. Calcóte, administratrix, et al., wbicb was afterwards treated as a petition in tbe original cause, tbe parties being tbe same, and out of tbis petition tbe present litigation bas arisen. Mrs. E. S. Calcóte, tbe mother of Mrs. Carsey, Mrs. E. O. Calcóte, and grandmother of tbe Elkin children, was tbe daughter of James Overton, and inherited from her father certain property, including tbe farm wbicb is tbe subject of controversy in tbis case. This farm was supposed by her, during her lifetime, by her children, and by tbe other heirs of James Overton, to have belonged to her in fee simple, and she accordingly treated it as such. In December, 1879, she undertook to- convey this farm to one of tbe daughters, Mrs. W. H. Carsey, tbe complainant, and expressed in tbe face of tbe deed tbe following considerations: “Eo-r tbe love and affection I have for my daughter, Lee J. Carsey, wife of W. II. Carsey, and for tbe tender care, attention, nursing, and support for these hist seven or eight year’s, especially during my present illness, given me by my said daughter, I have bargained and sold,” etc. Tbe annual rents during her lifetime being reserved to herself, and tbe fee intended to- be- conveyed, subject to tbis restriction, tbe deed containing tire usual covenants of warranty and seizin. Mrs. E. S. Galeote-, at Ibis time, lived with her daughter, Mrs. Carsey, and continued to reside with her until July 1, 1880, when she went to Tullahoma, and from there to Mississippi, where she died intestate, in January, 1881, leaving as her heirs at law, Mrs. Carsey, Mrs. E. O. Calcóte, and tbe two minor children of her other daughter, Mrs. Elkin. W. II. Carsey and wife thereupon took possession of tbe farm in controversy, under tbe deed hereinbefore alluded to, and either in person, or by their assignees, have ever since remained' in possession, notwithstanding the decree of this ’ court, adjudging the Elkin children entitled to an undivided one-third interest in the same, which, from some cause, seems never to have been enforced.
*322 During the year 1882, W. H. Carsey and wife, being-desirous of raising money upon this land, offered to mortgage it to the First National Bank, whose attorney refused to advise the loan, unless her sister, Mrs. E. O. Calcóte, would also join in the deed, or first convey her interest therein, whatever it might be, to her sister, Mrs. Carsey, the attorney for the bank insisting that the title of Mrs. Carsey, under the deed from her mother, was of doubtful validity, owing to the fact that under the will of James Overton, which had been set aside in 1867, and the consent decree by which his estate was divided among his heirs, it was very uncertain whether Mrs. E. O. Calcóte ever owned more than a life interest in this land. At this time the Elkin children.had taken no steps to enforce their rights, though their claim was freely discussed, and its chances of success given due weight, both by the representatives of the bank, and by Carsey and wife. Nevertheless, holding this deed, which was absolute upon its face, and recited a valuable consideration in addition to the love and affection, W. El. Carsey and wife, upon their own motion, and without the knowledge of their sister, Mrs. E. O. Calcóte, had prepared a deed by which they offered to convey to her their undivided one-third interest in certain property belonging to their mother’s estate, which, by agreement of counsel, is now valued at $12,000 to $14,000 in consideration of the conveyance of Mrs. E. O. Calcote’s interest, whatever it might be, in the farm, which, as the deed recites, was “derived from the es'tate of her grandfather, Dr. James Overton, deceased,” and which, by agreement of counsel, is now -valued at $6,000. These conveyances are made without covenants, and were intended simply to convey, each to- the other, their respective interests in the property described. Before this instrument was accepted by Mrs. E. O. Calcóte, the attorney for Mrs. Carsey,-who went to Mississippi for the purpose of having the deed signed, agreed for Mr. and Mrs. Carsey that they would *323 execute another instrument, conveying their interest in a certain other piece of property, which had been omitted from the previous conveyance, and would also agree to pay their pro rata share of what was known as the “Howe claim,” against their mother’s estate, amounting then to several thousand dollars, but which was sought to be barred by the statute of limitation, and which was afterwards settled at about $1,700. This subsequent conveyance was made by Carsey and wife, and both instruments registered upon the same day, October 9, 1S82. The mortgage for the benefit of the bank was thereupon executed, and Carsey and wife received its proceeds. Subsequent to all these proceedings the suit of the Elkin children was commenced, and resulted as hereinbefore stated. And, immediately upon the termination of the Elkin suit, Carsey and wife filed this petition for the purpose of recovering upon the covenants of warranty contained in their mother’s deed of December, 1879, the value of the land from which they claim to have been ousted by a superior title, and which they allege in their bill to be worth $7,500, but which, by agreement, is valued at $6,000. They allege that their right of action did not arise until there was a breach of warranty, which occurred when the decision of this court was rendered in favor of the Elkin children. The defendants to- this petition, Mrs. E. O. Calcóte and husband, plead and rely upon the statute of limitations, and -aver that the deed from Mrs. E. S. Calcóte to Mrs. Carsey was a gift, and not a bargain and sale for a valuable consideration, and that for this reason no recovery can be had on the covenants of warranty. Special Chancellor J. M. Dickinson dismissed complainants’ petition, with costs, and from this action they have taken an appeal to this court, and have assigned several grounds of exceptions, which have been considered under two heads: Eirst, it is insisted that the chancellor erred in refusing to allow them to recover the value of the land at the time of the execution of the *324 deed, as damages for breach of warranty; and, secondly, for refusing to allow them an action to ascertain the amount due for nursing, care, attention, and support of Mrs. Calcóte during seven or eight years.
The deed recites a valuable consideration in that it says “for the care, attention, nursing, and support for the last seven or eight years, especially during my present illness,” and it remains for the proof to determine whether or not, in point of fact, these services were actually rendered, and, if rendered, whether it was done under a contract, express or implied, that they should be p’aid for, or were rendered gratuitously at the time, and afterwards agreed to be paid for. It is perfectly clear that parol evidence is admissible to show the real consideration for a deed. Perry v. Railroad Co., 5 Cold., 138. Mrs. E. S. Galeote made her home with her daughter, Mrs. Carsey, from the death of her daughter, Mrs. Elkin, in 1815, to July, 1880, except during the summer months she would go to Tullahoma, and occasionally, when she Avould visit her daughter in Mississippi, and for two months during this time she boarded with Mrs. Fulgum, while Mr. and Mrs. Carsey were in New York, on a visit. And, SO' far as the proof discloses, Mrs. Carsey gave her every care, kindness, and attention that filial duty could suggest. It is not, however, claimed for the Carseys that these services were rendered under any contract or agreement that they were to be paid for, but that during her last illness, and while feeling grateful for the care and attention shown her, she voluntarily executed this conveyance to one-third of her entire estate, to take effect at her death, in recognition of and payment for these services. It is further insisted that Mrs. Calcóte prided herself on paying for everything she received; that when she went to see either of her daughters she invariably paid them board; and that this deed was executed from a similar motive, to pay for the extra attention she had received from the Oar-seys. The facts are that this deed was prepared by the *325 counsel of Mr. Carsey, at bis instance', and under bis directions to make it as strong as possible, while Mrs. Calcóte was still at bis bouse sick, and not expected to recover; tbat within a few months after this deed was executed Mrs. Calcóte retained counsel for the purpose of obtaining a settlement with Mr. Carsey for money which she claimed be owed her, and for the further purpose of annulling this deed, which she insisted had been obtained from her by fraud and undue influence and threats, while her mind was enfeebled by disease and medicine. When called upon for a settlement, Mr. Carsey furnished a statement charging himself with over $1,000, which he liad collected for her, and then discharged himself by charging Mrs. Calcóte for various items from 1877 to 1880, including doctors’ bills, servants’ hire, servants’ board, medicine, money furnished to go tO' different watering places, etc., and finally brought Mrs. Calcóte out in his debt about $86. It is denied both by Mr. and Mrs. Carsey that Mrs. Calcóte ever paid them board for the time she lived with them, and in the account which Mr. Carsey rendered Judge Allison, as Mrs. Cal-cote’s attorney, no charge was made for board. This omission may be explained either upon the hypothesis that the board had been paid for by the deed, or that no charge was intended to be made, or that the board had already been paid in cash. The proof establishes beyond controversy that it was Mrs. Calcote’s custom to pay board to each of her children with whom she resided, and that she had an income sufficient to do this; that she was not extravagant, and made no investments of her means; that when she left Mrs. Carsey’s, in July, 1880, she had neither money nor sfifficient clothing, and, in addition to all these circumstances, we have the uncontradicted testimony of two witnesses upon this subject. Mrs. Koscis says that in the spring of 1879, she saw Mrs. Calcóte hand Mrs. Carsey some money, saying to her at the time: “That is all I owe you, Lee, for board,” and that Mrs. Carsey replied, *326 “Yes.” Mr. Elkin says that Mrs. Calcóte told him, in the presence of Mrs. Carsey, that she paid Mrs. Carsey the same board that she paid Mrs. Elkins when she lived with her, and that Mrs. Carsey did not deny it. The weight of the evidence, .especially when construed in the light of Mr. and Mrs. Carsey’s subsequent conduct in making the deed they did to> Mrs. E. O. Calcóte, for the surrender of her interest in the farm, and in their failure to deny the allegations of the original bill that this deed was a gift, and should be charged to them as an advancement, seems to establish satisfactorily the fact that Mrs. Calcóte paid her board to Mr. and Mrs. Carsey during the time she lived with them, and that the deed was a pure gift, without any valuable consideration whatever, upon which no recovery can be had for a breach of the covenant of warranty. The decree of the chancellor is affirmed, with costs.